## THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

KARI PROSKIN,

     Plaintiff,

     v.

FOURSQUARE LABS, INC.,

     Defendant.

Civil Action No. 3:23-cv-30078

**Leave to File Granted on 9/13/2023**

## MEMORANDUM OF LAW IN SUPPORT OF FOURSQUARE LABS, INC.'S
## MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULES
## <u>OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)</u>

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................... 3

    **I.**    **Foursquare.**................................................................................................ 3

    **II.**    **Privacy Policies.**........................................................................................ 4

    **III.**    **Plaintiff's Allegations.**.............................................................................. 6

ARGUMENT ........................................................................................................ 8

    **I.**    **Because Plaintiff Fails to Establish Article III Standing, the Complaint Should Be Dismissed.**.................................................................................................. 8

        **A.**    **Plaintiff Cannot Establish that She Suffered a Concrete or Imminent Injury in Fact.** ...... 9

        **B.**    **Plaintiff Cannot Establish a Sufficiently Direct Causal Connection.** .................. 11

    **II.**    **Dismissal Also Is Warranted Because Plaintiff Has Failed to State a Claim.** ........ 12

        **A.**    **Standard for Ruling on Motions to Dismiss Pursuant to Rule 12(b)(6).** ............. 12

        **B.**    **Plaintiff Fails to State a Claim for Unjust Enrichment.** ...................................... 12

        **C.**    **Plaintiff Fails to State a Claim Under Chapter 93A.**............................................ 16

    **III.**    **Dismissal Should Be With Prejudice.** ...................................................... 22

CONCLUSION .................................................................................................... 23

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*,
374 F. 3d 23 (1st Cir. 2004) ............................................................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................12

*Aspinall v. Philip Morris Cos., Inc.*,
813 N.E. 2d 476 (Mass. 2004) ........................................................................................18

*Beddall v. State St. Bank & Tr. Co.*,
137 F. 3d 12 (1st Cir. 1998) ..............................................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................12

*Brito v. Garland*,
22 F. 4th 240 (1st Cir. 2021) ............................................................................................8

*Cabi v. Bos. Children's Hosp.*,
161 F. Supp. 3d 136 (D. Mass 2016) ..............................................................................22

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
2015 WL 3751422 (D. Mass. June 15, 2015) ................................................................22

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ..........................................................................................................9

*Clorox Co. v. Proctor & Gamble Comm. Co.*,
228 F.3d 24 (1st Cir. 2000) ..............................................................................................4

*Dantzler, Inc. v. Empresas Berríos Inventory & Ops., Inc.*,
958 F. 3d 38 (1st Cir. 2020) ............................................................................................11

*Dickey v. City of Boston*,
405 F. Supp. 3d 195 (D. Mass. 2019) ............................................................................11

*Engren v. Johnson & Johnson, Inc.*,
2021 WL 4255296 (D. Mass. Sept. 17, 2021) ................................................................17

*Fed. Trade Comm'n v. Kochava Inc.*,
2023 WL 3249809 (D. Idaho May 4, 2023) ....................................................................21

*Ferreira v. Sterling Jewelers, Inc.*,
    130 F. Supp. 3d 471 (D. Mass. 2015) ...................................................................22

*Hershenow v. Enterprise Rent-A-Car Co. of Bos., Inc.*,
    840 N.E. 2d 526 (Mass. 2006) ............................................................................21

*Hochendoner v. Genzyme Corp.*,
    823 F. 3d 724 (1st Cir. 2016)..................................................................................8

*Katz v. Pershing, LLC*,
    672 F. 3d 64 (1st Cir. 2012).............................................................................9, 11

*Kenn v. Eascare, LLC*,
    483 F. Supp. 3d 26 (D. Mass. 2020) ......................................................................4

*KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*,
    2021 WL 2982866 (D. Mass. July 15, 2021)........................................................14

*Laufer v. Acheson Hotels, LLC*,
    50 F. 4th 259 (1st Cir. 2022)..................................................................................8

*Leardi v. Brown*,
    474 N.E. 2d 1094 (Mass. 1985) ..........................................................................20

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)................................................................................................9

*Marion Fam. Chiropractic, Inc. v. Seaside Fam. Chiropractic, LLC*,
    2022 WL 1003963 (D. Mass. Apr. 4, 2022) ........................................................14

*Metro. Life Ins. Co. v. Cotter*,
    984 N.E. 2d 835 (Mass. 2013) ............................................................................15

*Mulder v. Kohl's Dep't Stores, Inc.*,
    865 F. 3d 17 (1st Cir. 2017)...........................................................................16, 17

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*,
    567 F. 3d 8 (1st Cir. 2009).............................................................................16, 17

*O'Connor v. Hurley*,
    16 N.E. 764 (Mass. 1888) ...................................................................................15

*Patenaude v. Orgain, LLC*,
    594 F. Supp. 3d 108 (D. Mass. 2022) ..................................................................18

*PMP Assocs. v. Globe News. Co.*,
    321 N.E.2d 915 (Mass. 1975) .............................................................................20

*Salamon v. Terra*,
    477 N.E. 2d 1029 (Mass. 1985) ........................................................15

*Shaulis v. Nordstrom, Inc.*,
    865 F. 3d 1 (1st Cir. 2017) .......................................................13, 21

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................8, 9

*Steinmetz v. Coyle & Caron, Inc.*,
    862 F. 3d 128 (1st Cir. 2017) .........................................................19

*Sullivan v. Dumont Aircraft Charter, LLC*,
    364 F. Supp. 3d 63 (D. Mass. 2019) ........................................12, 14, 15

*Tomasella v. Nestlé USA, Inc.*,
    962 F. 3d 60 (1st Cir. 2020) ........................................................12, 13

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ................................................................9

*Tyler v. Michaels Stores, Inc.*,
    840 F. Supp. 2d 438 (D. Mass. 2012) ..................................................16

*Walsh v. TelTech Sys., Inc.*,
    821 F. 3d 155 (1st Cir. 2016) ......................................................19-20

*Wellesley Hills Realty Trust v. Mobil Oil Corp.*,
    747 F. Supp. 93 (D. Mass. 1990) ...................................................17-18

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ..................................................................9

**Statutes**

15 U.S.C. § 45(n) ........................................................................19

G.L. c. 93A ........................................................................... *passim*

G.L. c. 93A, § 2(a) ......................................................................16

G.L. c. 93A, § 9(1) .....................................................................20-21

G.L. c. 260, § 5A .......................................................................17

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................16, 17

Fed. R. Civ. P. 12(b)(1)...............................................................................................................8

Fed. R. Civ. P. 12(b)(6)..................................................................................................4, 8, 12

## PRELIMINARY STATEMENT

Defendant Foursquare Labs, Inc. ("Foursquare") is a cloud-based location technology platform that offers a range of developer tools and data solutions to third-party analysts, application developers, and brands. Plaintiff's two-count, cookie-cutter Complaint (the "Complaint") focuses on one of these developer tools, Movement SDK, which is a software development kit that allows developers to integrate Foursquare's location technology into their own third-party mobile applications. Plaintiff, on behalf of herself and a putative class, essentially alleges that the Uber Technologies, Inc. ("Uber") ride-sharing application ("Uber App") utilized Movement SDK,[1] that this allowed Uber to collect and share her geolocation data with Foursquare, and that thereafter, Foursquare sold and profited from her data without her consent. Plaintiff's allegations and claims, for unjust enrichment and violation of the Massachusetts Unfair and Deceptive Business Practices Act, G.L. c. 93A ("Chapter 93A"), are baseless and should be dismissed in their entirety, with prejudice, for multiple independent reasons.

*First*, as a threshold matter, Plaintiff lacks standing to assert her claims. Plaintiff does not and cannot establish that she suffered an injury in fact because she cannot show a concrete or imminent harm. Instead, her allegations of harm, such as the hypothetical risk that unnamed third parties could use Foursquare's data to identify people and track them to sensitive locations, are purely conjectural and fall well short of the injury in fact required by Article III. In addition, Plaintiff's theory of harm relies on the actions of independent third parties, which precludes her from establishing the requisite causal connection between her alleged injury and Foursquare's alleged misconduct.

---

[1] As explained *infra* and in the attached Declaration of Wade Wegner ("Wegner Decl."), this alleged fact upon which the entire Complaint is premised is false. Uber does not and has never utilized Movement SDK and for that reason alone, the Complaint should be dismissed.

**Second**, Plaintiff's unjust enrichment claim is barred both by the availability of an adequate remedy at law *and* because Plaintiff fails to plead facts that could plausibly support a claim that Foursquare was unjustly enriched by its acquisition and sale of Plaintiff's geolocation data. Although, as detailed *infra*, Plaintiff's Chapter 93A claim also should be dismissed, it is the availability of the Chapter 93A claim that bars Plaintiff's unjust enrichment claim from the outset. Further, the lack of factual allegations supporting her unjust enrichment claim provides a further independent reason why the court should dismiss this claim. Simply put, Plaintiff fails to allege any facts that support her conferral of a benefit directly upon Foursquare, that she incurred any detriment or loss to herself or Class members in terms of the value of the geolocation data, or that any alleged benefit received by Foursquare was unjust.

**Third**, Plaintiff's Chapter 93A claim must be dismissed because her allegations fail to satisfy the heightened pleading requirements and because she fails to plead facts to plausibly support a Chapter 93A claim. She does not allege that Foursquare committed any deceptive or unfair acts or practices, nor does she allege an actual injury. Plaintiff generally alleges that she was deceived by Foursquare's policies—yet she does not actually refer to any of Foursquare's policies or any allegedly deceptive representations therein. Further, her speculative allegations of harm—that she could be tracked to sensitive locations and that she would not have used the Uber App but for the alleged misrepresentation—fall far short of adequately pleading a Chapter 93A claim.

For each of these independent reasons, addressed more fully below, Plaintiff's claims fail as a matter of law. Further, because numerous of the Complaint's deficiencies cannot be cured, amendment would be futile. Thus, the Complaint must be dismissed in its entirety with prejudice, and Foursquare should be awarded its attorneys' fees and costs.

**FACTUAL BACKGROUND**

## I.      Foursquare.

Foursquare is one of the largest location technology platforms in the world.  Compl. at ¶ 17, ECF No. 1.  When it was founded in 2009, Foursquare was primarily a social network application that allowed users to virtually "check in" when they visited physical places, such as a restaurant or coffee shop.  *Id.* at ¶ 18.  The "check ins" that took place over the years provided Foursquare with useful location data and technology, leading to Foursquare's development of "Pilgrim SDK," later renamed "Movement SDK."[2]  *Id.* at ¶¶ 20, 24, 25.  An SDK is a set of tools that help a mobile application function in some way.  *See id.* at ¶ 21 ("SDKs are a set of prebuilt tools that app developers can use in their own apps.").  Movement SDK provides location technology and data to applications, enabling companies to provide users with relevant location-based information, such as stores that sell the company's products near the user's location or notifying application users when they are near a store with a sale.  *See id.* at ¶¶ 23, 25, 26.

While many developers have embedded Movement SDK in their applications, Uber is not one of these developers.  Wegner Decl. at ¶ 6.  Instead, Uber uses Foursquare's "Places API."  *Id.* at ¶ 7.  The differences in these two developer tools reflect their distinct purposes and functions.  Consistent with its focus on stagnant "places" location data as opposed to transient consumer location data, Places API collects a user's geolocation data only to the extent necessary to fulfill Foursquare's role as a service provider.  *Id.*; Wegner Decl. Ex. A, at 1.  Specifically, applications use Places API for access to "Points of Interest" data ("POI"), which "relates to physical places (restaurants, shops, airports, hotels, etc.) and is used to identify and provide context to points of

---

[2] Foursquare changed the name of the SDK product from Pilgrim SDK to Movement SDK as of January 31, 2023.  For purposes of this motion, there is no difference between the products and except where specified, we refer to the product herein as Movement SDK.

interest worldwide." *See* Wegner Decl. at ¶ 7; Wegner Decl. Ex. A, at 5. Uber, for instance, uses Places API to improve the Uber App's functionality by locating the name of a business when the application user begins to type a location in the Uber App's search bar. Wegner Decl. at ¶7; Wegner Decl. Ex. B. Other functions of Places API include enabling users to "tag" the geographical location of content being shared in an application and highlighting top ranked points of interest based on a user's location. Wegner Decl. at ¶ 7; *see also* Wegner Decl. Ex. C; Wegner Decl. Ex. D.

## II.  Privacy Policies.

Beyond the factual inaccuracy of Plaintiff's baseline assertion that Uber uses Movement SDK, Plaintiff alleges throughout her Complaint that she was unaware that Uber or Foursquare would use her data for anything other than Uber App functionality. *See, e.g.*, Compl. at ¶¶ 12, 44–45, 50. However, her allegations are contradicted by the content of the Uber and Foursquare privacy policies, both of which outline the various ways that the companies use data. [3]

For instance, while Plaintiff alleges that Uber's Privacy Notice does not disclose that it shares location data with Foursquare, *id.* at ¶ 44, in fact the Privacy Notice explicitly describes numerous third parties with whom Uber may share personal data. *See* Declaration of Jennifer Chunias ("Chunias Decl.") Ex. A, quoted in Compl. at ¶ 45. Section III. D. 6 of the Uber Privacy

---

[3] We refer herein to the Uber Privacy Notice and the Foursquare Privacy Policy because the "[C]omplaint's factual allegations are . . . dependent upon" these documents. *See Beddall v. State St. Bank & Tr. Co*., 137 F. 3d 12, 17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."); *see also Kenn v. Eascare, LLC*, 483 F. Supp. 3d 26, 29 n.1 (D. Mass. 2020) ("The Court 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.'") (quoting *Clorox Co. v. Proctor & Gamble Comm. Co.*, 228 F. 3d 24, 32 (1st Cir. 2000)).

Notice states that Uber may share data with "Uber service providers and business partners," which includes third-parties "[who] use this data to provide their services and such other purposes are disclosed in their privacy notices." Chunias Decl. Ex. A, at Section III. D. 6. In addition, Uber's Privacy Notice contradicts Plaintiff's allegation that "Uber's Privacy Notice falsely implies that the geolocation data is only collected and shared for app functionality, or matters related to the ride service." Compl. at ¶ 45. Section III. B of the Uber Privacy Notice, entitled "[h]ow we use personal data," states that Uber uses data not only to enable reliable and convenient transportation, but also, *inter alia*, "for marketing and advertising," "to send non-marketing communications to users," and "in connection with legal proceedings." Chunias Decl. Ex. A, at Section III. B. The list provided in Uber's Privacy Notice makes it clear that Uber is monetizing its data in many ways. Uber's Privacy Notice also provides that Uber may also allow third-party entities "to provide audience measurement and analytics services for Uber," to distribute internet advertisements on Uber's behalf, and "to track and report on the performance of those advertisements." *Id.* "These entities may use cookies, web beacons, SDKs, and other technology to identify the devices used by visitors to our websites, as well as when they visit other online sites and services." *Id.*

Foursquare's Consumer Services Privacy Policy ("Foursquare's Privacy Policy") similarly sets forth a series of disclosures that directly contradict Plaintiff's allegations. For instance, Foursquare's Privacy Policy explicitly informs consumers that Foursquare receives data from third parties, including from "Business Partners, Developers & Enterprise Customers" which "includes third parties who create and deliver experiences using our Developer & Enterprise Services, such as the incorporation of our location technology (i.e., SDK or APIs) into their apps and websites. In some cases, these third parties may license data to us." Wegner Decl. Ex. A, at 2-3.

In addition, Foursquare provides consumers with multiple options regarding use of their personal data, as Foursquare's Privacy Policy states that a user has the right to (1) "request access to or copies of the personal data [Foursquare has about the user]," (2) "opt-out of the sale of [their] personal data, the sharing of [their] personal data for cross-context behavioral advertising purposes and the processing of [their] personal data for targeted advertising;" (3) "object to or restrict the processing of [their] personal data that [Foursquare] process[es]; and (4) "withdraw [their] consent to [Foursquare's] processing of [their] personal data at any time." *Id.* at 7-8.

And contrary to Plaintiff's allegation that "Foursquare employs no technical controls to prohibit its customers from identifying consumers or tracking them to sensitive locations," Compl. at ¶ 41, Foursquare expressly does not allow such use of its data:

> "Foursquare is also a participating member of the Network Advertising Initiative's Precise Location Solution Provider Enhanced Standards which, among other things, requires that participating members not use, allow the use of, sell, or share any information about device or user activity correlated to a known Sensitive Points of Interest, including: Places of religious worship; . . . Places that may be used to infer an LGBTQ+ identification; . . . Domestic abuse shelters, including rape crisis centers; . . . Medical facilities that cater predominantly to sensitive conditions; . . . [and] Places that may be used to infer refugee or immigrant status." Wegner Decl. Ex. A, at 2.

Foursquare's Privacy Policy additionally states that "to protect [users'] privacy, we do not share [users'] latitude and longitude coordinates, and we do not share inferred home and work locations." *Id.* at 5. In other words, Foursquare makes the protection of sensitive location data a central part of its privacy practices, taking multiple steps to protect the safety of consumers.

## III.      Plaintiff's Allegations.

Plaintiff alleges that through the use of Movement SDK, "Foursquare secretly gathers and sells vast amounts of time-stamped, precise geolocation data from consumers' cell phones, and then profits by selling that data to other companies." Compl. at ¶¶ 1, 3. Plaintiff alleges that her connection to Foursquare's alleged improper gathering and sale of her data was through her use of

the Uber App.[4]  *Id*. at ¶¶ 6–7.  Specifically, she alleges that "Uber has utilized Foursquare's technology for its app since at least 2016," that Uber's Privacy Notice does not disclose that location data Uber collects "is shared with Foursquare, or that it is shared for the purpose of selling in the geolocation data market," and that "[d]uring the entire period that Plaintiff used the Uber app, it contained Foursquare's geolocation tracking technology."  *Id*. at ¶¶ 42, 44, 47.

Plaintiff claims Foursquare's acquisition and sale of "valuable personal location information belonging to Plaintiff and Class members" unjustly enriched Foursquare.  *Id*. at ¶ 72.  Plaintiff claims that Foursquare's retention of revenue derived from the sale of such data is "unjust and inequitable because [Foursquare] did not obtain the consent of Plaintiff and Class members before selling their data to third parties."  *Id*. at ¶ 74.  She further alleges that Foursquare's actions constitute a violation of Chapter 93A because they are "unfair or deceptive," *id*. at ¶ 83, and because they violate Section 5 of the Federal Trade Commission ("FTC") Act as interpreted by the FTC.  *Id*. at ¶ 85.

Plaintiff seeks to assert her unjust enrichment claim on behalf of a putative class of similarly-situated individuals, which she defines as "all persons in the United States whose data, including but not limited to their geolocation data, was sold by Defendant without their consent." *Id*. at ¶ 62.  She also seeks to assert her Chapter 93A claim on behalf of a subclass defined as all class members who reside in Massachusetts.  *Id*. at ¶ 63.

---

[4] Although as explained *supra* pp. 3-4, Uber does not use Movement SDK so the entire premise regarding how such data is allegedly collected and shared is false.

# ARGUMENT

The court should dismiss Plaintiff's Complaint in its entirety because she lacks standing and because she fails to state a claim for either unjust enrichment or violations of Chapter 93A. The dismissal should be with prejudice because Plaintiff has no prospect of stating a viable claim against Foursquare, so amendment would be futile.

## I.     Because Plaintiff Fails to Establish Article III Standing, the Complaint Should Be Dismissed.

As standing is a matter of jurisdiction, a defendant can move to dismiss for lack of standing under Rule 12(b)(1).  A defendant may challenge standing at the motion to dismiss stage in one of two ways: facially or factually.  When the attack is facial, courts apply the same plausibility standard as a motion to dismiss under Rule 12(b)(6).  *See Laufer v. Acheson Hotels, LLC*, 50 F. 4th 259, 265 (1st Cir. 2022).  If the challenge is factual, then "the court need not accept the plaintiff's allegations as true but can weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

In a putative class action, at least one named plaintiff must demonstrate Article III standing with respect to each claim for the case to proceed.  *Brito v. Garland*, 22 F. 4th 240, 252 (1st Cir. 2021).  Thus, to avoid dismissal under Rule 12(b)(1) for lack of standing, "a named plaintiff must 'clearly allege facts demonstrating' that she '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  "Neither conclusory assertions nor unfounded speculation can supply the necessary heft" to establish standing at the pleading stage. *Hochendoner v. Genzyme Corp.*, 823 F. 3d 724, 730 (1st Cir. 2016).

A.    **Plaintiff Cannot Establish that She Suffered a Concrete or Imminent Injury in Fact.**

Under Article III, "an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (citations omitted). An asserted injury must exist "in both a qualitative and [a] temporal sense" to sustain a claim. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

The concreteness requirement examines the substance of a plaintiff's asserted injury. For an injury to be "concrete" it "must actually exist"—that is, it must be "real and not abstract." *Spokeo*, 578 U.S. at 340. "[T]raditional tangible harms," such as physical and monetary harms, qualify as "concrete" injuries, as do certain "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Ramirez*, 141 S. Ct. at 2204. But there are limits, and courts may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id*.

The imminence requirement measures an injury's likelihood, functioning "to ensure that the alleged injury is not too speculative for Article III purposes." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992). Thus, a plaintiff must plead a harm that "has either happened or is sufficiently threatening; it is not enough that the harm might occur at some future time." *Katz v. Pershing, LLC*, 672 F. 3d 64, 71 (1st Cir. 2012); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (holding that the "threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient") (citations omitted). A threatened harm is not imminent when it is premised on "a highly attenuated chain of possibilities," as such harm cannot be said to be "certainly impending." *Clapper*, 568 U.S. at 410.

9

Here, Plaintiff does not and cannot establish that she suffered an injury in fact because she cannot show a concrete or imminent harm.  Plaintiff summarily alleges that her "data was sold by [Foursquare] without her consent, and [] Plaintiff suffered injury as a result of [Foursquare]'s conduct."  But rather than specify the nature of any injury suffered "as a result of [Foursquare]'s conduct," the Complaint asks the Court to simply take Plaintiff's word for it that she was harmed in some unspecified (but sufficiently concrete) way.  Plaintiff does not plead any diminished value in her data as a result of any purported sale,[5] nor does she plead any other loss that is attributable to Foursquare's alleged conduct.  Indeed, Plaintiff offers nothing but speculation that Foursquare ever acquired or sold her data, as she pleads no facts regarding where, how, when, or to whom Foursquare sold *any* data, let alone Plaintiff's data.

Nor can Plaintiff establish an injury in fact based on the hypothetical risk of future harm. Despite speculating that "Foursquare's Data Can be Used to Identify People and Track Them to Sensitive Locations," Compl. at p. 5, this risk is purely conjectural; Plaintiff does not allege that she or anyone else has ever been tracked to any sensitive locations as a result of Foursquare's conduct.  Nor can she, because Foursquare does "not use, allow the use of, sell, or share any information about device or user activity correlated to a known Sensitive Points of Interest," such as places of worship, certain medical facilities, places that could be used to infer immigration status, or other defined sensitive locations.[6] Wegner Decl. Ex. A, at 1-2.  At most, Plaintiff has

---

[5] Plaintiff falsely asserts that Uber utilizes Movement SDK.  Compl. at ¶ 47; *see also id*. at ¶ 30 ("More than 125,000 developers worldwide have embedded Foursquare's SDK into their apps, including Uber.").  However, Uber utilizes Foursquare's other enterprise product, Places API, and does not use Movement SDK.  *See* Wegner Decl. at ¶¶ 6–7.  As discussed *supra* pp. 3–4, Places API does not share or sell user-specific data, and thus, Plaintiff cannot assert any injury in fact deriving from her use of the Uber App.  *See id.* at ¶ 7.

[6] One exception to this that is not at issue here is that Foursquare may provide such information in response to a valid warrant or subpoena as required by law.

alleged that Foursquare collects and possesses anonymized data from third party applications. Such allegations are insufficient to constitute an injury in fact.

**B.      Plaintiff Cannot Establish a Sufficiently Direct Causal Connection.**

To demonstrate traceability, a plaintiff must show "a sufficiently direct causal connection between the challenged action and the identified harm." *Katz*, 672 F. 3d at 71. This causal connection must be "demonstrable, as opposed to overly attenuated." *Dickey v. City of Boston*, 405 F. Supp. 3d 195, 199 (D. Mass. 2019). Further, "[b]ecause the opposing party must be the source of the harm, causation is absent if the injury stems from the independent action of a third party." *Katz*, 672 F. 3d at 71–72; *see also Dantzler*, *Inc. v. Empresas Berríos Inventory & Ops., Inc.*, 958 F. 3d 38, 48 (1st Cir. 2020) ("The Supreme Court has cautioned against courts finding that a plaintiff's injury is fairly traceable to a defendant's conduct where the plaintiff alleges a causal chain dependent on actions of third parties.").

Here, Plaintiff fails to establish the requisite causal connection between her claimed injury and Foursquare's alleged misconduct. The Complaint is replete with the actions of independent third parties, whose conduct serves as the only link between Foursquare and Plaintiff or her alleged harm. Even taking Plaintiff's allegations as true (they are not), Foursquare only receives data when third-party applications incorporate Movement SDK into their apps and choose to share that data with Foursquare. Foursquare cannot independently acquire, let alone sell, Plaintiff's data without Plaintiff having downloaded a third-party application and consented to that application's terms and conditions. Furthermore, Plaintiff's theory of harm based on tracking requires that additional third parties buy the raw data, then analyze it together with a secondary data set to come up with any sort of identifying information. There are simply too many links in the causal chain for any injury to be fairly traceable to Foursquare's alleged conduct.

**II.    Dismissal Also Is Warranted Because Plaintiff Has Failed to State a Claim.**

    **A.    Standard for Ruling on Motions to Dismiss Pursuant to Rule 12(b)(6).**

Rule 12(b)(6) allows the Court to dispense with spurious or legally-flawed complaints before the parties begin the expensive and burdensome discovery process.  A plaintiff is only entitled to relief if the complaint's factual allegations raise the stated right to relief above a speculative level.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, to survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor do "legal conclusion[s] couched as . . . factual allegation[s]." *Id.*

    **B.    Plaintiff Fails to State a Claim for Unjust Enrichment.**

To state a claim for unjust enrichment, Plaintiff must sufficiently plead (1) that she conferred a benefit upon Foursquare, (2) "an appreciation or knowledge" by Foursquare of the benefit, and (3) that, under the circumstances, Foursquare's acceptance or retention of the benefit would be inequitable without payment for its value.  *Tomasella v. Nestlé USA, Inc.*, 962 F. 3d 60, 82 (1st Cir. 2020); *Sullivan v. Dumont Aircraft Charter, LLC*, 364 F. Supp. 3d 63, 90 (D. Mass. 2019) (a claim for unjust enrichment requires there be "unjust enrichment of one party and unjust detriment to another party.").  However, the availability of an adequate remedy at law bars an unjust enrichment claim.  *Tomasella*, 962 F. 3d at 82–84.

Plaintiff claims that she "unwittingly conferred a benefit upon [Foursquare]" and that Foursquare "acquired valuable personal location information belonging to Plaintiff and Class

members which it then sold to other parties without the consent of Plaintiff and Class members." Compl. at ¶ 72.  She alleges that she "received nothing from this transaction," *id.*, and thus Foursquare's retention of profits received from the alleged sale of her data "is unjust and inequitable because [Foursquare] did not obtain the consent of Plaintiff and Class members before selling their data to third parties." *Id.* at ¶ 74.

### 1.    Plaintiff's Unjust Enrichment Claim is Barred by the Availability of an Adequate Remedy at Law.

As an initial matter, Plaintiff's unjust enrichment claim is barred by the availability of her Chapter 93A claim, which is "an adequate remedy at law" for purposes of an unjust enrichment claim.  *See Tomasella*, 962 F. 3d at 82–84; *Shaulis v. Nordstrom, Inc.,* 865 F. 3d 1, 16 (1st Cir. 2017) (affirming dismissal of unjust enrichment claim because plaintiff had an adequate remedy at law under Chapter 93A, even though the court also properly dismissed the Chapter 93A claim).

Although Plaintiff pleads that she lacks a remedy at law, Compl. at ¶ 72, she alleges that her Chapter 93A claim is an available legal remedy for the exact same wrongful conduct that she alleges gives rise to her unjust enrichment claim.  *Id.* at ¶¶ 76–99.  It is immaterial that, as explained *infra*, Plaintiff's 93A claim suffers from the same fatal pleading deficiencies as her unjust enrichment claim; what matters is that the 93A claim is "available" to her.  *See Tomasella*, 962 F. 3d at 82–84 ("[i]t is the availability of a remedy at law, not the viability of that remedy that prohibits a claim for unjust enrichment" and collecting cases).

Therefore, because Plaintiff has a Chapter 93A claim "available," the court should dismiss her unjust enrichment claim.

### 2.    Plaintiff's Unjust Enrichment Claim Independently Fails Because Plaintiff Did Not Have a Direct Exchange with Foursquare.

Although the court should dismiss the unjust enrichment claim on the basis of Plaintiff having the available adequate legal remedy of her Chapter 93A claim, Plaintiff's failure to plead

the elements of unjust enrichment also independently warrants dismissal.  First, Plaintiff's claim must be dismissed because she fails to plead that she conferred a benefit directly upon Foursquare, as required for an unjust enrichment claim.  *See KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, 2021 WL 2982866, at *16 (D. Mass. July 15, 2021) ("unjust enrichment requires that the plaintiff directly bestowed a benefit on the defendant").  Rather, Plaintiff plainly states that a *third-party application* (*i.e.*, not the Foursquare application) collected her data and then provided it to Foursquare—not that she conferred a benefit directly on Foursquare.  *See* Compl. at ¶¶ 43, 46–48. Moreover, Plaintiff has not alleged that Foursquare defrauded or coerced her, or that Foursquare had any direct communication with her at all.  Foursquare's lack of direct connection in the alleged collection of Plaintiff's data is fatal to her unjust enrichment claim.  *See Marion Fam. Chiropractic, Inc. v. Seaside Fam. Chiropractic, LLC*, 2022 WL 1003963, at *10 (D. Mass. Apr. 4, 2022) ("[Plaintiff] alleges only that [individual defendant] took materials and information that it provided to her and that she then shared those with [co-defendants].  It does not allege that it gave this information directly to [the co-defendants], therefore the claim of unjust enrichment as to both [co-defendants] must be dismissed."); *KPM Analytics*, 2021 WL 2982866, at *16 ("No cause of action lies where a plaintiff discloses the trade secret to a third party, who then disclosed the trade secret to defendant").

### 3. Plaintiff Cannot Show Any Unjust Benefit Retained at Her Expense.

Further, the Court should dismiss the unjust enrichment claim because Plaintiff did not and cannot allege that she has incurred any detriment or loss to herself or Class members in terms of the value of the geolocation data.  *See Sullivan*, 364 F. Supp. 3d at 90 ("Under Massachusetts law, a claim for unjust enrichment requires there be 'unjust enrichment of one party and unjust detriment to another party.'").  Plaintiff alleges that she "received nothing" from Foursquare's sale of her "valuable personal location information."  Compl. at ¶ 72.  Yet, Plaintiff never alleges that

Foursquare somehow precluded her from selling or monetizing her data, nor that Foursquare's conduct otherwise caused her data to lose value.  Because Plaintiff fails to plead that she has suffered an "unjust detriment," her claim should be dismissed.  *See Sullivan,* 364 F. Supp. 3d at 90.

### 4. The Mere Receipt of a Benefit is Insufficient to Support a Claim for Unjust Enrichment.

Finally, Plaintiff cannot plead plausible facts to support that any alleged benefit received by Foursquare was unjust, as it could be reasonably expected from Uber's Privacy Notice that unnamed third-parties such as Foursquare would receive and utilize raw mobile device data. Whether a benefit is unjust depends on the reasonable expectations of the parties.  *See Metro. Life Ins. Co. v. Cotter*, 984 N.E. 2d 835, 850 (Mass. 2013).  The injustice of the enrichment or detriment in quasi-contract equates with the defeat of someone's reasonable expectations."  *Id*. (quoting *Salamon v. Terra*, 477 N.E. 2d 1029, 1031 (Mass. 1985)); *Salamon*, 477 N.E. 2d at 1032 (quoting *O'Connor v. Hurley*, 16 N.E. 764, 766 (Mass. 1888)) ("One cannot, merely by erecting a house on the land of another, compel him to pay for it, even if the land is benefited by the erection of the structure.").

Plaintiff's allegation that Foursquare was unjustly enriched from the sale of Plaintiff's data and subsequent retention of revenues is, in fact, in line with reasonable expectations of the parties and is outlined in both Foursquare's Privacy Policy and the Uber Privacy Notice.  *See, e.g.,* Wegner Decl. Ex. A, at 6 (outlining Foursquare's use of personal data); Chunias Decl. Ex. A, at Section III. B (outlining Uber's use of personal data).[7]  Nor can Plaintiff point more generally to any

---

[7] Moreover, as explained *supra* pp. 3-4, Plaintiff's fundamental assertion that Uber utilized Movement SDK and Foursquare thereby acquired and sold troves of Plaintiff's sensitive geolocation data is simply not true, thereby further weakening any argument Plaintiff could make regarding Foursquare's alleged benefits being unjust.

Massachusetts law or federal law to support an assertion that it was unjust for Foursquare to receive and monetize raw mobile device data.

Because Plaintiff has an adequate legal remedy and she fails to plead a claim for unjust enrichment, the court should dismiss her unjust enrichment claim.

### C.   Plaintiff Fails to State a Claim Under Chapter 93A.

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." G.L. c. 93A, § 2(a). To state a claim under Chapter 93A, a plaintiff must plead facts sufficient to establish "(1) a[n unfair or] deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the defendant's [unfair or] deceptive act or practice and the consumer's injury." *Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 448 (D. Mass. 2012).

Here, Plaintiff's conclusory allegations fall far short of satisfying the claim's heightened pleading requirements, and independently fail to establish the predicate elements for a Chapter 93A claim.

### 1.   Plaintiff Fails to Plead her Chapter 93A Claim with the Requisite Particularity.

Federal Rule of Civil Procedure 9(b) requires parties who allege claims based in fraud to "state with particularity the circumstances constituting fraud." To comply with Rule 9(b)'s special pleading requirements in the First Circuit, a plaintiff must set out "the who, what, where, and when of the allegedly false or fraudulent representation," *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F. 3d 23, 29 (1st Cir. 2004), and "identify[] the basis for inferring scienter," *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F. 3d 8, 13 (1st Cir. 2009). This heightened pleading standard applies to claims of misrepresentations or knowing omissions under Chapter 93A. *See Mulder v. Kohl's Dep't Stores, Inc.*, 865 F. 3d 17, 21–22 (1st Cir. 2017) (observing that the Rule

9(b) heightened pleading standard applies to claims under Chapter 93A whose "core allegations effectively charge fraud") (quoting *N. Am. Catholic*, 567 F. 3d at 15).

Here, Plaintiff's allegations fail to satisfy any of Rule 9(b)'s "who, what, where, and when" requirements, making it impossible for Foursquare to meaningfully respond to Plaintiff's allegations.  Despite alleging that "[Foursquare] . . . knowingly omitted that [Foursquare] had access to and was selling [Plaintiff's] location data," Compl. at ¶ 88, Plaintiff fails to allege the content of any purported false representation made by Foursquare, pointing only to the alleged deficiencies in Uber's Privacy Notice, of which Foursquare has no control.  By failing to specify "the time, place, and content of any alleged false representation" made by Foursquare, Plaintiff's claim is fatally deficient on its face under the heightened pleading standard.  *Engren v. Johnson & Johnson, Inc.*, 2021 WL 4255296, at *6 (D. Mass. Sept. 17, 2021); *see also Mulder*, 865 F. 3d at 21–22 (Chapter 93A claim fell "well short" of satisfying Rule 9(b) where plaintiff alleged she "was 'induced' to travel to Kohl's by its 'advertising *in general*' and its 'reputation' of 'amazing prices'").

The lack of particularity also limits Foursquare's ability to fully evaluate the viability of Plaintiff's claim under the statute of limitations, which is four years for a Chapter 93A claim.  *See* G.L. c. 260, § 5A.  Plaintiff states that she "has used the Uber app for years," Compl. at ¶ 7, that she "has periodically used the Uber mobile application for the last four years, with the last time being approximately February 2023" *id*. at ¶ 46, and that "Uber has utilized Foursquare's technology for its app since at least 2016," *id*. at ¶ 42,—none of which provide enough detail to determine whether her claim is timely.

### 2.    Plaintiff Fails to Allege Any Unfair or Deceptive Acts or Practices.

Plaintiff's claim must also fail because she cannot sufficiently plead that Foursquare has committed an unfair or deceptive act or practice.  *See Wellesley Hills Realty Trust v. Mobil Oil*

*Corp.*, 747 F. Supp. 93, 103 (D. Mass. 1990) (conclusory allegations of unfair acts or practices insufficient to state a claim under Chapter 93A).

> ### a. Plaintiff Fails to Adequately Allege That Foursquare Committed Deceptive Acts or Practices.

To sufficiently allege a deceptive act or practice, a plaintiff must establish three elements: "(1) there must be a representation, practice, or omission likely to mislead consumers; (2) the consumers must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be 'material,' that is likely to affect consumers' conduct or decision with regard to a product." *Patenaude v. Orgain, LLC,* 594 F. Supp. 3d 108, 112 (D. Mass. 2022) (citation omitted). An act or practice is deceptive under Chapter 93A if it "could reasonably be found to have caused a person to act differently" from the way they "otherwise would have acted." *Aspinall v. Philip Morris Cos., Inc.*, 813 N.E. 2d 476, 486 (Mass. 2004).

Although Plaintiff summarily alleges that she and others "were deceived by [Foursquare]'s policies," Compl. at ¶ 86, she fails to cite to *any* of Foursquare's policies, let alone any deceptive representations contained within. In fact, the only policies that Plaintiff describes having read belong to a third-party application—not Foursquare. Specifically, Plaintiff describes multiple perceived deficiencies in Uber's Privacy Notice,[8] while failing to point to any affirmative statements or omissions by Foursquare itself. Nor can she, as Foursquare has no relationship with third-party applications' end users. As Plaintiff's allegations imply, it is only the third-party

---

[8] Although Plaintiff alleges that "Uber's Privacy Notice falsely implies that geolocation data is only collected and shared for app functionality, or matters related to the ride service," Compl. at ¶ 45, such allegations are patently false. In fact, Uber's Privacy Notice states that Uber may disclose users' data to, among others, "marketing partners and marketing platform providers, including . . . third-party data providers" and "advertising intermediaries, such as Google, Criteo and Rokt." Chunias Decl. Ex. A, at Section III. D. 6. It further illuminates that those "intermediaries use this [user] data to provide their services and such other purposes are disclosed in their privacy notices." *Id.*

applications like Uber that maintain a direct relationship with their end users; Foursquare does not engage with its partner applications' customers such as Plaintiff. Thus, Plaintiff cannot impute alleged deficiencies in Uber's Privacy Notice onto Foursquare as a means to establish the commission of a deceptive act or practice. *See Steinmetz v. Coyle & Caron, Inc.*, 862 F. 3d 128, 141 (1st Cir. 2017) (holding that "some business, commercial, or transactional relationship is required even for a claim brought under section 9.").

Plaintiff's reliance on the FTC Act fares no better. Plaintiff states that "[a]ccording to the Federal Trade Commission, the *surreptitious* collection and sale of geolocation data is a violation of Section 5(a) of the FTC Act." Compl. at ¶ 5 (emphasis added). However, to the contrary, Foursquare is transparent in its disclosures, as evidenced by its comprehensive, publicly available privacy policy.[9] In fact, Foursquare's Privacy Policy explicitly references Uber in explaining its location data practices to consumers. *See* Wegner Decl. Ex. A, at 1 ("Ever type in a business name into Uber . . .? Foursquare powers th[is] feature[] as well as others that help people navigate, explore, and enjoy the world around them."). Foursquare is forthright in explaining its location data practices because it has nothing to hide, and Plaintiff's attempts to manufacture a deceptive act or practice attributable to Foursquare are unpersuasive.

### b.    Plaintiff Fails to Adequately Allege That Foursquare Committed Unfair Acts or Practices.

Plaintiff also fails to allege any unfair conduct. "[A]n act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness;' 'is immoral, unethical, oppressive or unscrupulous;' and 'causes substantial injury to

---

[9] Further, Plaintiff makes no attempt to satisfy the legal standard required to state a claim under Section 5(a). *See* 15 U.S.C. § 45(n) (providing that an act or practice is only unfair under Section 5(a) if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves" and that is "not outweighed by countervailing benefits to consumers or competition.").

consumers.'" *Walsh v. TelTech Sys., Inc.*, 821 F. 3d 155, 160 (1st Cir. 2016) (quoting *PMP Assocs. v. Globe News. Co*., 321 N.E. 2d 915, 917 (Mass. 1975)).  To rise to the level of an "unfair" act or practice, "the defendant's conduct must generally be of an egregious, non-negligent nature." *Id.*

Here, Plaintiff attempts to create the appearance of impropriety by alleging that Foursquare "collects location data from cell phones using spyware called 'Movement SDK.'"  Compl. at ¶ 3.  Putting aside the fact that Uber does not use Movement SDK and therefore the entire basis for Plaintiff's complaint is factually wrong, Movement SDK is not "spyware," and SDKs themselves are not trackers.  Simply put, an SDK is a set of tools that help a mobile application function in some way.  *See id.* at ¶ 21 ("SDKs are a set of prebuilt tools that app developers can use in their own apps.").  Although Plaintiff attempts to mischaracterize Foursquare's role in providing its Movement SDK and related services to third party applications such as Uber, Movement SDK serves an entirely legitimate purpose of supporting applications' internal operations and marketing strategies.  Plaintiff does not allege that Foursquare collects any personally identifying information about users, which underscores that Foursquare does not acquire geolocation data for the purposes of tracking or identifying specific users.  Moreover, Foursquare's partner applications can only collect and share user data with user consent.   Plaintiff fails to allege what is unfair about Foursquare's alleged monetization of their anonymized data, especially because users can opt-out of sharing their data.  Nor does she adequately allege that there is anything "egregious" about this opt-in system that rises to the level of an "unfair" act or practice.

   3.    **Plaintiff Fails to Allege a Cognizable Injury.**

Chapter 93A is not "mean[t] to authorize purely vicarious suits by self-constituted private attorneys-general." *Leardi v. Brown*, 474 N.E. 2d 1094, 1102 (Mass. 1985).  Only consumers who have suffered a cognizable injury caused by the allegedly unfair or deceptive practice are permitted to bring a Chapter 93A claim.  *See* G.L. c. 93A, § 9(1) (Only a person "who has been injured . . .

may bring an action."); *see also Hershenow v. Enterprise Rent-A-Car Co. of Bos., Inc.*, 840 N.E. 2d 526, 535 (Mass. 2006) ("A consumer is not [] entitled to redress under [] 93A, where no loss has occurred.  To permit otherwise is irreconcilable with the express language of [] 93A, § 9."). Thus, to state a viable claim, a plaintiff must allege and prove that she has suffered an "objective, 'identifiable' harm that goes beyond the [purported] deception itself."  *Shaulis*, 865 F. 3d at 10.

Nevertheless, Plaintiff only alleges the vague possibility of future harm; she does not allege any facts to support that she was actually injured by any collection or dissemination of her data. Instead, Plaintiff lays out a hypothetical risk that she could be tracked to sensitive locations if a third party bought her anonymized raw data, compared the latitude and longitude coordinates from that data to a secondary dataset to try and identify any residential addresses, and then compared those addresses to public records to identify the name of the owner or resident of each address. *See* Compl. at ¶¶ 35, 39–40.  Not only is this complete conjecture, but implicit in these allegations is the fact that third parties cannot track Plaintiff based solely on the information collected or disclosed by Foursquare.  Rather, other data brokers must take multiple steps to even attempt to link Foursquare's data to specific individuals.  This speculation is insufficient to give rise to an inference of consumer injury.  *See Fed. Trade Comm'n v. Kochava Inc.*, 2023 WL 3249809, at *6–7 (D. Idaho May 4, 2023) (dismissing Federal Trade Commission Act claim where complaint did no more than allege that secondary harms by ill-intentioned third party data brokers were theoretically possible); *see also Shaulis*, 865 F. 3d at 10-11, 13 (rejecting "induced purchase" theory of injury under Chapter 93A because there were no "allegations of real loss grounded in some objective measure").

In addition, even assuming, *arguendo*, that Plaintiff's allegation that Foursquare's actions amounted to a violation of Section 5 of the FTC Act, as interpreted by the FTC, Compl. at ¶¶ at

79–80, 85, is true, a per se violation of Chapter 93A does not itself entitle Plaintiff to relief.  *See*

*Ferreira v. Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471, 478 (D. Mass. 2015) ("A per se violation

alone—simply proving that [defendant] violated the FTC regulations—is not enough to prevail.").

In a final attempt to salvage her claim, Plaintiff alleges that "[h]ad Plaintiff . . . known that

[Foursquare] was selling [her] data, they would either have ceased to use the relevant phone

applications or would have requested compensation for the misappropriation and sale of their

location data."  Compl. at ¶ 89.  But merely alleging that one would not have purchased the product

but for the alleged misrepresentation is insufficient to state a Chapter 93A claim.  *See In re Celexa*

*& Lexapro Mktg. & Sales Pracs. Litig.*, 2015 WL 3751422, at *8 (D. Mass. June 15, 2015)

(dismissing 93A claim where plaintiff pleaded an "'abstract' denial of opportunity to make an

informed decision," rather than an actual economic injury).  And as detailed in Uber's Privacy

Notice, Plaintiff could opt-out of data sharing at any time; any dissemination of her data was

conditional on her consent.  *See* Chunias Decl. Ex. A, at Section IV (informing Uber users of their

options to set or update their preferences regarding location data collection and sharing).  Thus,

Plaintiff has failed to allege that Foursquare's conduct caused a cognizable injury as required to

bring a claim under Chapter 93A.

## III.        Dismissal Should Be With Prejudice.

The Complaint should be dismissed with prejudice.  The Complaint is replete with "legal

deficiencies," the documents it inherently relies on—but which Plaintiff failed to attach—foreclose

Plaintiff's legal theories, and the Complaint's own "factual allegations [] render [its] claims legally

untenable."  *See Cabi v. Bos. Children's Hosp.*, 161 F. Supp. 3d 136, 164–65 (D. Mass 2016).

Accordingly, "amendment would be futile."  *Id*.

## **CONCLUSION**

For all of the foregoing reasons, Foursquare respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice.

Dated:  September 14, 2023

Respectfully submitted,
FOURSQUARE LABS, INC.
By its attorneys,

/s/  *Jennifer L. Chunias*
Jennifer L. Chunias (BBO #644980)
JChunias@goodwinlaw.com
Emily Unger (BBO #691502)
EUnger@goodwinlaw.com
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: (617) 570 1000
Fax.: (617) 523 1231

*Attorneys for the Defendant*

23

## CERTIFICATE OF SERVICE

I, Jennifer L. Chunias, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 14, 2023.

/s/ Jennifer L. Chunias
Jennifer L. Chunias
